IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

**BENJAMIN PATINO LOPEZ,**

    Plaintiff,

v.                                                                        **Civil Action No. 5:07CV163**
                                                                                             **(Judge Stamp)**

**KIM WHITE, Regional Director;
JOYCE FRANCIS, Warden;
CECIL NICHOLS, Associate Warden Programs;
D. JONES, Unit Discipline Committee Chairman;
M. RAMEY, Chaplin;**

    Defendants.

## REPORT AND RECOMMENDATION

The *pro se* plaintiff, a federal inmate formerly incarcerated at the Federal Correctional Institute Gilmer, West Virginia ("FCI Gilmer"), initiated this action by filing a complaint on December 17, 2007, pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. On February 13, 2008, the plaintiff was granted leave to proceed *in forma pauperis* and the plaintiff paid the initial filing fee of $55.06 on March 4, 2008. The undersigned conducted a preliminary review of the complaint and then issued an Order to Answer to the defendants on February 25, 2009. Summonses were issued the same day. On May 18, 2009, the defendants filed a Motion to Dismiss or, in the alternative, for Summary Judgment and a memorandum in support thereof. On May 19, 2009, the undersigned issued

a Roseboro Notice. The plaintiff filed a response on June 18, 2009. This matter is now before the undersigned for review and report and recommendation.

## I. The Complaint

In his complaint, the plaintiff alleges that he has been discriminated against because of his race and that he has been denied the opportunity to freely practice his religion. He also claims that BOP staff violated his religious rights when they placed him in segregation based on false disciplinary charges. Finally the plaintiff alleges that he was denied participation in readings and songs during Catholic services at the chapel. As a result of these allegations, the plaintiff claims that he has suffered pain and anguish. The plaintiff is seeking $1,250,000.00 in damages as relief for these actions.

Plaintiff names as defendants Kim White, Mid-Atlantic Regional Director for the BOP, as well as former or present FCI Gilmer employees: Joyce Francis (former Warden); Cecil Nichols (former Associate Warden); Daniel Jones (Assistant Case Management Coordinator); and Michael Ramey (Chaplain).

## II. Standard of Review

### A. Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc. v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley

v. Gibson, 355 U.S. 41, 45-46 (1957). When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits, and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

   B. **Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing

that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

### III. Analysis

#### A. No Physical Injury

Under the Prison Litigation Reform Act ("PLRA"), no inmate may bring any civil action against the United States or an employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury — whether he claims a tort violation or a constitutional violation. 42 U.S.C. § 1997e(e); Thompson v. Carter, 284 F.3d 411 (2d Cir. 2002); Mayfield v. Fleming, No. 01-7602, 2002 WL 561217 (4$_{th}$ Cir. April 16, 2002); Evans v. Welch, No. 99-6716, 2000 WL 432390 (4$_{th}$ Cir. April 20, 2000); Harper v. Showers, 174 F.3d 716 (5$_{th}$ Cir. 1999); Oliver v. Keller, 289 F. 3d 623 (9$_{th}$ Cir. 2002); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11$_{th}$ Cir. 2002). The pertinent provision of the PLRA provides as follows:

> No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

4

28 U.S.C. § 1346(b)(2).

In the case at bar, the plaintiff does not allege any physical injuries suffered as a result of the alleged actions of the defendants. He instead asserts that he has suffered "heartache after heartache, pain after pain, full of hurt and sorrow day by day . . ." and that "this pain caused me to lose my soul, my faith, my God. And almost my life." Apparently, this has caused the plaintiff to be placed on prescription drugs for his mental suffering, but that is insufficient for the plaintiff to claim he has suffered a physical injury. See Michtavi v. United States, 2009 WL 578535, *5 (M.D. Pa. March 4, 2009) (taking Prozac for mental condition does not mean that the emotional problems are a physical injury); see also, Davis v. District of Columbia, 158 F.3d 1342, 1349 (D. D.C. 1998) (somatic or physical manifestations of emotional distress is not physical injury for purposes of PLRA). Because the plaintiff has not shown any real physical injury, his entire complaint should be dismissed.

**B. Kim White**

For a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied. "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. Of Dirs. Of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). The West Virginia long-arm statute is contained in W.Va. Code §56-3-33(a).[1]

---

[1]This section provides as follows:
(a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of the subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or

The Southern District of West Virginia has succinctly stated as follows regarding personal jurisdiction:

"[b]ecause the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary...to go through the normal two-step formula for determining the existence of personal jurisdiction. Rather the statutory inquiry necessarily merges with the Constitutional inquiry. In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997).

To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interest here would not "[o]ffend

---

proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

(1) Transacting any business in this state;
(2) Contracting to supply services or things in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury outside this state if he or she regularly does or solicits business, or engages in any persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state; Provided, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Having an interest in, using or possessing real property in this state; or
(7) Contracting to insure any person, property or risk located within this state at the time of contracting.

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivision (1) through (7), subsection (a) of this section may be asserted against him or her.

The Southern District of West Virginia has succinctly stated as follows regarding personal jurisdiction:

"[b]ecause the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary...to go through the normal two-step formula for determining the existence of personal jurisdiction. Rather the statutory inquiry necessarily merges with the Constitutional inquiry. In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997).

To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interest here would not "[o]ffend

---

proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

(1) Transacting any business in this state;
(2) Contracting to supply services or things in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury outside this state if he or she regularly does or solicits business, or engages in any persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state; Provided, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Having an interest in, using or possessing real property in this state; or
(7) Contracting to insure any person, property or risk located within this state at the time of contracting.

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivision (1) through (7), subsection (a) of this section may be asserted against him or her.

traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Those minimum contacts necessary to confer jurisdiction are limited to those activities by which a person "purposely avails itself of the privilege of conducting activities within the forum state."Hanson v. Denckla, 357 U.S. 235, 253, 78 S,Ct. 1228, 2 L.Ed.2d 1283 (1958)see also In re Celotex, 124 F.3d at 628 (the minimum contacts must be "purposeful"). This occurs where the contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed..2d 528 (1985)(emphasis in original), or where the defendant's efforts are "purposefully directed" at the state. Id. at 476, 105 S.Ct. 2174. Vass v. Volva Trucks North America, Inc., 304 F. Supp.2d 851, 854 (S.D. W.Va. 2004).

Kim White is the Regional Director for the Mid-Atlantic Region, which handles the administrative remedy appeals for the BOP. Her office is located in Annapolis Junction, Maryland, and the plaintiff has not provided any further proof to show that the defendant had any other types of contact with the state of West Virginia. The fact that she, or her office, handles appeals from prisoners inside the state of West Virginia is insufficient to find that she has minimum contacts with the state. See Cuoco v. Hurley, 2000 WL 1375273 (D.Colo.) (citing Johnson v. Rardin, No. 91-1211, 1992 WL 9019, *1 (10th Cir. Jan. 17, 1992) (court lacks personal jurisdiction over defendants who signed reviews of inmate's appeals outside of the state)). Therefore, Defendant White must be dismissed from this action because of lack of personal jurisdiction over her.

### C. Michael Ramey

#### 1. First Amendment Claims

The plaintiff claims that Defendant Ramey would not allow him to participate in readings

7

or songs while attending Catholic service at the chapel. He claims that this action infringes on his right to exercise his religion. However, the plaintiff has not exhausted his administrative remedies with regard to this claim, and, even if he had, this claim must still fail because it does not state a claim upon which relief can be granted.

A Bivens action, like an action under 42 U.S.C. §1983, is subject to exhaustion of administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). Porter v. Nussle, 534 U.S. 516, 524 (2002). Under the PLRA, a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. §1983 must first exhaust all available administrative remedies. 42 U.S.C. §1997e. Exhaustion, as provided in §1997e(a), is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). While the phrase "with respect to prison conditions" is not defined in 42 U.S.C. §1997e, the Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter at 517. Moreover, exhaustion is even required when the relief the prisoner seeks, such as monetary damages, is not available. Booth, 532 U.S. at 741. The United States Supreme Court has held that proper exhaustion of administrative remedies is necessary, thus precluding inmates from filing untimely or otherwise procedurally defective administrative grievances or appeals and then pursuing a lawsuit alleging the same conduct raised in the grievance. See Woodford v. Ngo, 548 U.S. 81, 83 (2006). In Woodford, the United States Supreme Court clarified that the PLRA exhaustion requirement requires proper exhaustion. Id. at 84. The Court noted that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.

8

The Court found that requiring proper exhaustion fits with the scheme of the PLRA, which serves three main goals: (1) eliminating unwarranted federal court interference with the administration of prisons; (2) "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Id. at 93-94. As the Court concluded, "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." Id. at 95.

"The BOP makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. *See* 28 C.F.R. § 542. 10, *et seq* . This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via Central Office Administrative Remedy Appeal." Owens v. Haynes, No. 3:07cv29, 2008 WL 4571821 * 3 (N.D.W.Va. 2008).

It appears that the plaintiff exhausted all of his remedies with the exception of the claim against Defendant Ramey and his being denied participation in the Catholic services. Plaintiff filed one remedy request with regard to this issue and it was informally resolved; the plaintiff then went no further in attempting to exhaust his administrative remedies (Doc. 50-2 p.2). The plaintiff failed to follow up on this process within the twenty (20) day time period required to do so, and will not be able to exhaust his remedies at all regarding this issue. Therefore, the plaintiff's First Amendment claim against Defendant Ramey must be dismissed with prejudice.

However, even if the plaintiff did exhaust his administrative remedies with regard to this

claim, it will still must be dismissed. The First Amendment provides, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., Amend. I. Although prisoners do not lose these rights upon imprisonment, such rights may be limited. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). The standard for determining whether a prisoner's constitutional rights have been violated was established by the Supreme Court in Turner v. Safely, 482 U.S. 78 (1987). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 89.

The burden lies with the plaintiff to establish that the regulation at issue is unconstitutional. See Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993), cert. denied, 510 U.S. 1049 (1994). In deciding whether a defendants' actions can be sustained as "reasonably related to legitimate penological interests," the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90. The BOP's policy regarding inmate religious activities is to "provide[] inmates of all faith groups with reasonable and equitable opportunities to pursue their religious beliefs and practices, within the constraints of budgetary limitations and consistent with the security and orderly running of the institution and the Bureau of Prisons." 28 C.F.R. 548.10(a).

Here, the plaintiff is not challenging a particular regulation, but instead claims that

Defendant Ramey would not allow him to participate in Catholic services and threatened to send him to the SHU if he did participate. Even if these actions would amount to a violation of the plaintiff's constitutional rights, the statements made by the plaintiff are false (Doc. 50-5 ¶10). In fact, the plaintiff was regularly allowed to participate in the services, but continually wanted more and more. He even tried to direct the priests and volunteers at the services, never satisfied with his level of participation (Doc. 50-5 ¶¶ 12, 13). The plaintiff has not offered any facts to rebut these claims, and so it appears that his First Amendment rights were not violated by Defendant Ramey. Accordingly, this claim against Defendant Ramey should be dismissed.

The plaintiff also claims that Defendant Ramey placed him in the SHU, and as a result of this action he was unable to celebrate All Saints Day, apparently claiming that he was not allowed to exercise his religion. The plaintiff was placed in SHU on October 31, 2006 (Doc. 50-2 ¶ 19). Defendant Ramey did not arrive at FCI Gilmer until December 10, 2006, after these events had already occurred. Therefore, Defendant Ramey could not have participated in the events at issue (Doc. 50-5 ¶ 2). Because Defendant Ramey was not responsible for these actions and plaintiff fails to name any defendant who was, these claims must also be dismissed.

### D. Joyce Francis, Cecil Nichols and Daniel Jones

All of these defendants appear to have been named in this suit solely because of their supervisory positions. The claims against Defendants Francis and Nichols only extend to denials of the plaintiff's administrative remedies, and the claim against Defendant Jones applies only to the plaintiff being placed in the SHU because of an incident report.

With regard to Defendants Francis and Nichols, the plaintiff does not set forth any specific act that they committed to violate his constitutional rights. Pursuant to Rule 8(a) of the Federal

11

Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's's jurisdiction depends...(2) a short and plain statement of the claim **showing that the pleader is entitled to relief**, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added). "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by the plaintiff that he has a valid claim of some type against defendant." Migdal v. Rowe Price-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001)(citation and internal quotations omitted).

Moreover, liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001)(internal citation omitted). In order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v.Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzzo v. Good, 423 U.S. 362 (1976). Instead the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright at 501; Colburn at 666. It is clear that the plaintiff has showed no facts to support any allegations against Defendant Francis and Nichols that they violated his constitutional rights. They must, therefore, be dismissed from this action.

With regard to Defendant Jones, the plaintiff merely states that the defendant was on the Unit

Discipline Committee and had found evidence to support his conviction on an incident report.[2] The plaintiff sets forth no claims against Defendant Jones that he violated his constitutional rights in any way, and he must be dismissed from this action.

## IV. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Doc. 49) be **GRANTED** and the plaintiff's complaint be **DISMISSED WITH PREJUDICE** .

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1);Thomas v. Arn, 474 U.S. 140 (1985) Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. In addition, the clerk is directed to send a copy to counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: June 29, 2009

---

[2]The incident which he complains about was ultimately expunged.

 /s/ James E. Seibert  
JAMES E. SEIBERT  
UNITED STATES MAGISTRATE JUDGE